STATE of Maine

v.

Henry L. POULIN, Jr., et al.

Supreme Judicial Court of Maine.

May 25, 1971.

William H. Clifford, Jr., County Atty., Auburn, for plaintiff.

Gaston M. Dumais, Lewiston, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ.

POMEROY, Justice.

Appellants Henry L. Poulin, Jr., and his brother, Richard Poulin, have appealed from a judgment entered on a verdict of guilty of the crime of breaking, entering and larceny, which verdict was returned by a jury.

The appeal of a third defendant, Ralph E. Mosher, Jr., was heard earlier. That appeal was sustained by this Court. State v. Mosher, Me., 270 A.2d 451 (Nov. 6, 1970).

At oral argument the State conceded the appeal of Richard J. Poulin must be sustained for the same reasons the appeal of Mosher was sustained. His appeal is, therefore, sustained.

Henry Poulin, Jr., raises as Points on Appeal:

1. The Court erred in denying defendant's Motion for acquittal made at the conclusion of the evidence.

2. The verdict is contrary to the weight of the evidence.

3. The verdict is not supported by substantial evidence.

4. The court erred in sustaining objections to questions addressed to the witness Officer McIntire of Samoset (sic), Mass.

5. The Court erred in denying the Motion to Suppress as amended by the Defendant.

6. The Court erred in charging the jury.

7. The Court erred and defendant was substantially prejudiced and deprived of a fair trial by reason of the following circumstances; that said illegally seized evidence was admitted in evidence contrary to the rights accorded citizens under the Fourth Amendment of the Constitution of the U. S.

The facts disclosed by the evidence are that sometime between the hours of 7 p. m. on August 22, 1968, and 7 a. m. on August 23d, a general store in Turner, Maine, was burglarized and certain new clothing, much of it still packaged, was stolen.

At approximately 2 a. m., August 23d, a Police Officer in Lewiston, Maine, observed a 1960 Chevrolet, Maine registration 243–311, containing three occupants being driven on a Lewiston street.

Shortly thereafter the same vehicle was observed by another Officer at another place in Lewiston. This Officer was able to identify the operator of the vehicle as Henry Poulin, Jr., the Appellant.

At about 2:40 that same morning the vehicle was seen to enter the Maine Turnpike at its Lewiston entrance and leave the

Turnpike at the Auburn exit some five or six miles from where it had entered.

Shortly thereafter, the vehicle was again seen reentering the Turnpike through its Auburn toll gate.

At about 9:30 a. m., August 23, 1968, a Police Officer on routine patrol in Somerset, Massachusetts, observed a 1960 Chevrolet bearing Maine registration 243-311, parked in a lane on private property in an area quite remote from the built up portion of the town.

Three persons were standing outside the vehicle. As the Police Cruiser approached, one of the three was seen to close the trunk of the Chevrolet car. The Officer stopped his vehicle, informed the men they were trespassing on private property and ordered them to move the vehicle. Henry Poulin entered the driver's seat and drove the car off the private property and stopped it near the Police Cruiser. The Officer requested Henry Poulin to display the registration for the vehicle and his driver's license. The driver's license contained pencil markings. This caused the Officer to become suspicious of its validity. The registration certificate revealed the car was registered in the name of Henry Poulin's wife.

As to the Officer was talking to the occupants of the car he observed some new clothing, including some tee-shirts still in the cellophane wrappings and two Mackinaw jackets on the back seat of the vehicle in his plain view. He also observed that there was no key to the vehicle. The Officer had knowledge that there had been a number of burglaries into clothing manufacturing firms in the Fall River area and that new winter clothing had been stolen.

He proceeded to place all three defendants under arrest for the crime of trespassing. At that time he radioed for another Police Cruiser which arrived shortly thereafter. All three were then taken in Police Cruisers to the Police Station, some five or six miles away.

After the defendants were booked and an attorney was called to represent them, one of the Officers returned to the scene of the arrest in company with a mechanic and the car was driven into the Police Station yard.

During a routine check with the Police Department in Lewiston, Maine, the Officer was informed of the burglary in Turner. He then went to the District Court in Fall River and obtained a Search Warrant. The State concedes the Search Warrant was defective.

At about noon he returned to the Police Station and in the presence of the Appellant, Henry Poulin, Jr., and his attorney, removed the stolen articles from the back seat of the car. These articles were later received in evidence at defendant's trial over his objection. A Motion to Suppress them as illegally seized had earlier been denied.

All the issues raised in this appeal concerning the allegedly illegally seized evidence were discussed and decided in State v. Mosher, supra. The stolen goods were in plain view in the back seat of the car. No search was necessary. Their seizure was proper and they were properly admitted in evidence.

In State v. MacKenzie, 161 Me. 123, 210 A.2d 24, we said that observation of that which is open and patent is not a search.

This Court further pointed out in State v. Poulin, Me., 268 A.2d 475, that the constitutional guarantee against unreasonable searches and seizures "does not prohibit a seizure without warrant where there is no need of a search, and where the contraband subject matter is fully disclosed and open to the eye and hand."

We later reaffirmed the application of the plain view doctrine in State v. Mosher, supra. In this, a companion case to *Mosher,* we again affirm application of the rule and use it to declare it was not error for the Court below to deny the Motion to Sup-

press the evidence and for the Justice presiding at the trial to have received the profferred evidence in the case.[1]

The Appellant urges it was error in the Trial Court to admit the exhibits because he says continuity of possession of the Police authorities had not been shown.

The precise issue here raised was urged in State v. Mosher, supra, which was a case arising on an identical set of facts.

We decided the issue adversely to *Mosher*. We must decide the issue adversely to Poulin and now do so on the same basis described in State v. Mosher, supra.

The Petitioner makes several complaints about the instructions the Presiding Justice gave to the jury.

His first complaint is with the Court's explanation of a reasonable doubt. The Court below told the jury:

"A reasonable doubt is a doubt for which one has a reason."

This is a correct statement.

Later he said:

"Therefore, the burden is not upon the State to prove the elements of a crime to an exact demonstrable mathematical certainty. The burden is on the State, however, to prove the elements of a crime beyond a mere possibility or a probability. The best test we can come up with is this reasonable doubt test. Now a reasonable doubt is not a whimsical doubt, fanciful or imaginary. You and I, Mr. Foreman, can take most any subject in the world and argue about it I'm sure. You take one side, I'll give you your pick, I'll take the other, and we can work up an argument about most any conceivable thing. My son and I used to do that, as a matter

of fact. We'd take a subject, whatever it was. I'd say, 'Which side of the argument do you want?' So he'd say, 'I'll take the one side.' And I'd say, 'I'll take the other.' So we might work up quite an argument. Maybe my philosophy on that particular point was purely theoretical, had no practical application. But yet it was a theoretical argument. Maybe his was. But my point is, most anything is subject to some debate, some argument. But the question is whether the substance of that argument is a reasonable thing or not. If it's a whimsical argument, a fanciful argument, imaginary argument, a purely theoretical argument, is it reasonable?"

This too is a correct statement.

Later he continued:

"A reasonable doubt is not a vague, fanciful or speculative doubt, but a doubt arising out of the case as presented for which some good reason may be given; and such a doubt as in the graver transactions of life would cause reasonable, fair-minded, honest, and impartial people to hesitate and pause."

We consider this a clear, understandable and a completely correct explanation of reasonable doubt, just as this Court did when it approved the same language in State v. Merry, 136 Me. 243, 8 A.2d 143 at 153.

Specific objection is noted to this language which the Court used:

"Now you, each of you, have made some important decisions some time in your life, I'm sure you have. You've had to make decisions that deal with the medical treatment, for example, of your children. You've had to make some decisions dealing with the education of your family.

---

1. For use of the *"plain view"* doctrine in cases recently decided in other jurisdictions: see United States v. Capps, C.C.A.9, 435 F.2d 637 (Nov. 24, 1970); Wright v. United States, C.A.D.C. (4/19/71), Criminal Law Reporter BNA issue of May 12, 1971, 9 CRL 2113.

In view of the ground on which we rest this decision as to the legality of the seizure, it is unnecessary to discuss the applicability of the rule in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (June 22, 1970).

You've had to make some decisions, probably, that dealt with the buying of a home; going to the bank and getting some mortgage money. You've had to make some decisions about employment. Where am I going to work, and what am I going to do to support myself and my family? Now all those decisions that you make are important ones. And what do you do? It seems to me that what you do is that you assemble all the facts that bear on the subject under discussion. And you think them over and you weigh them seriously and you analyse them. And finally you decide what you're going to do. Haven't you satisfied yourself beyond a reasonable doubt that your proposed course of conduct is the one you ought to take? "

We find no error in the charge, especially when viewed as a whole.

■ The Appellant further complains that the Presiding Justice instructed the jury they should apply the law which he gave them. In effect, the Appellant would have us declare jurors were the judges of the law as well as the facts.

We answer this argument as this Court did a similar argument advanced in State v. Park, 159 Me. 328, 193 A.2d 1, by saying:

"It has long been the settled practice in our State that the function of the jury is to find the facts and to apply the law as given by the Court to the facts in reaching their verdict."

■ The Defendant objects to this language which the Court used in charging the jury:

"In deliberating together, at this moment you don't know how your fellow jurors are going to react to these facts. So I want you to feel free to discuss them openly amongst yourselves. I like to use the expression, 'listen to each other with a disposition to be convinced by the other's argument as opposed to listening to each other without any disposition to be swayed by the others' arguments.' You see, when 12 minds like yours must ultimately agree, you must respect each other, and you must respect the opinions of each other. Sometimes you might ask yourself after talking it all over whether the opinion that you have is poorly founded in view of the fact that many of your fellow jurors don't agree with you, who've heard the same evidence under the same circumstances. And, of course, you must realize that cases, this case, as well as any other, has to be determined sometime by a jury. And, of course, you will make every effort to do that by discussing openly, candidly, frankly, the facts; weighing and analysing them according to your several experiences, and agreeing upon a result."

This instruction was given as part of the regular charge. We find no error in the instruction.[2]

Finally the Appellant says the evidence is insufficient to warrant conviction.

Unlike the situation with which the Court was confronted in *Mosher,* supra, this defendant was seen in Maine and identified as the driver of the car some eight or nine miles from the scene of the crime in the early hours of the morning. He was seen entering the Maine Turnpike. He was the driver of the car. The car was registered in the name of his wife. In the presence of the arresting Officer he exercised control over the car. The property which it was established by evidence, convincing in its effect beyond a reasonable doubt, was stolen, was found on the seat of the car he was driving.

His possession of the property when found by the Police Officer in Massachusetts was both "recent" and "exclusive."

2. The issue here presented does not reach the criticism frequently leveled at Commonwealth v. Tuey, 8 Cush. 1, or the "*Allen*" charge to which reference was made in State v. Toppi et al., Me., 275 A.2d 805.

The jury properly concluded this set of circumstances left no reasonable doubt that he was a person who had broken into the store, had entered it and had committed the larceny from therein. State v. Saba, 139 Me. 153, 27 A.2d 813.

There was no evidence in the case which would serve to explain the Appellant's possession of the stolen property consistently with innocence.

In *Mosher*, supra, we said as to him:

"The defendant was never seen in Turner before or after the crime was committed. He was never identified as being an occupant of the car anywhere in Maine. Moreover, he was not shown to have been an occupant of the car anywhere in Massachusetts until after he and his associates had been apprehended by the police. He was neither the operator nor the owner of the automobile, nor did he exercise any control over it. Upon the evidence adduced, he could as well have been a hitchhiker or a person invited to become a passenger at some point between Auburn and Somerset, Massachusetts. He might have been keeping a rendezvous at the place of apprehension. He exercised no personal or conscious dominion or control over the stolen property, even jointly with others, such as would fairly link him to a joint enterprise and impose upon him the burden of explanation."

This case is obviously distinguishable from *Mosher*.

In the case here before us the jury was instructed that the possession of stolen goods creates a presumption that such person was the thief. The Presiding Justice then defined a presumption as "a probable inference which our common sense draws from circumstances." He instructed that the presumption was not conclusive and that it is stronger or weaker as the possession is more or less recent and that it was for the jury to say what weight is to be given the presumption created by the facts in this case.

He went on to say that unless the accused can account for that possession consistent with his innocence, the presumption will warrant his conviction.

It is also noted that earlier in his charge the Presiding Justice had explained there was a presumption the defendant was innocent and had further stated such presumption continued throughout the trial and disappeared only if and when the jury became convinced there was no reasonable doubt of the defendant's guilt.

No objection was registered to that portion of the charge in which the Court instructed the jury there was a "presumption" arising from possession of stolen goods. Nevertheless, we feel constrained to comment.

Since our Court first used the expression "presumption of guilt arising from recent possession of stolen goods" in State v. Merrick, 19 Me. 398, it has been often used in giving instruction to juries.

As recently as 1969 our Court in State v. O'Clair, Me., 256 A.2d 839, and again in 1970, State v. Mosher, supra, used the word "presumption" in describing the inference of fact the jury is permitted to draw from recent and exclusive possession of stolen goods. In both cases we were careful to point out that possession absent an explanation consistent with innocence would permit *but not compel* a finding of guilt.

In *O'Clair*, supra, we described the procedural effect of a presumption in a criminal case to be the same as that procedural rule described in Hinds v. John Hancock Mutual Life Insurance Co., 155 Me. 349, 155 A.2d 721, i. e.,

"A disputable presumption persists until the contrary evidence persuades the factfinder that the balance of probabilites is in equilibrium, or, stated otherwise, until the evidence satisfies the jury or factfinder that it is as probable that the presumed fact does not exist as that it does exist."

In State v. Millett, Me., 273 A.2d 504, decided February 9, 1971, this Court was con-

cerned with an instruction given in a case in which a defendant was charged with murder, that self-defense was an affirmative defense which must be asserted and established by a defendant by a fair preponderance of the evidence.

The Court acknowledged that this had long been the rule in Maine but then discarded it saying:

"We are satisfied that we should now adopt the majority rule. It has the virtue of relative simplicity and should eliminate that apparent confusion which has arisen when trial courts have attempted to harmonize a burden of proof imposed upon the defendant with the continuing obligation of the State to prove guilt beyond a reasonable doubt. Since the claim of justification by self-defense is not raised by plea, it need not be anticipated by the State but will enter the case as an issue only if and when substantial evidence bearing on the issue is introduced, from whatever source that evidence may come. In that sense only can it be said that the defendant has a burden, the burden of coming forward with evidence of justification which will generate the issue and justify a finding by the factfinder, if indeed one is made, that by reason of the claimed justification a reasonable doubt exists as to defendant's guilt. As has frequently been stated, the defendant's burden under these circumstances is purely procedural and there is no occasion for instructions to the jury with respect to it. As was stated in State v. Strawther, supra at page 139, 'Moreover, the giving of the instruction was unauthorized, even under the State's own construction of it, i. e., that it dealt only with the matter of the burden of evidence as distinguished from the burden of proof. This because "The shifting of the burden of evidence is governed by rules of procedure which are designed solely for the guidance of the court; with respect to their observance, operation, or effect, the jury has no function to perform."' When such evidence is forthcoming the trial court must first, viewing that evidence in the light most favorable to the defendant, determine whether or not it is adequate to raise the self-defense issue, and, if believed, would under the legal tests applied to a claim of self-defense permit a reasonable doubt as to guilt, stemming from that claim, to arise. Having concluded as a matter of law that the self-defense issue is thus properly tendered, the trial court need only instruct the jury as to the elements of self-defense. He will have no occasion to speak of burden of proof other than to explain the State's burden of proving guilt beyond a reasonable doubt. If the evidence adduced, so viewed, is legally insufficient to raise the issue, the trial court will have no occasion or obligation to instruct the jury on the elements essential to a valid claim of self-defense, but rather will remove the issue of self-defense from jury consideration." [3]

The problem arising from the instruction given in those cases in which one is charged with larceny, or breaking, entering and larceny, that recent and exclusive possession of the stolen goods raises a "presumption," is often one of semantics.

The Court in State v. Merrick, supra, made it clear that the inference of fact

3. The sentence above quoted from *Hinds*, supra, appearing in *O'Clair*, supra, which was unnecessary to the decision of that case must be read in connection with what was said in State v. Millett, supra. In addition, In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (decided March 31, 1970), declared:
"Lest there remain any doubt about the constitutional statute of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."
We view *Winship*, supra, as casting serious doubt on the constitutionality of presumptions in their impact on the criminal law, when used *with reference to a fact necessary to constitute the crime.*

(there described as a presumption of guilt) arising from the recent possession of stolen goods did not *require* conviction. Nevertheless, many instructions to juries have been so framed that laymen could reasonably conclude they were being told conviction *was required* unless the accused had affirmatively proved that his possession was innocent. As was said in State v. Malone, 327 Mo. 1217, 39 S.W.2d 786 (quoted in State v. Millett, supra):

"A lawyer might work out a construction to reconcile and harmonize that positive direction with the concluding sentence and the presumption of innocence to which defendant is entitled, but it is not likely a jury of laymen could do so. To say the best of it, the instruction was likely to be misunderstood by, and to mislead, the jury."

■ We view the law of Maine to be that when one is found in "recent" and "exclusive" possession of stolen goods, it is *proper* for a jury to infer as a fact the person so found in possession was the thief.

■ The fact of such possession is a sufficient circumstance upon which to rest a verdict of guilty, if it convinces of guilt beyond a reasonable doubt and not otherwise. The fact of such possession creates a jury question unless other circumstances in evidence, from whatever source, whether produced by the state or the defendant, so long as legally received in evidence, create a reasonable doubt as to the defendant's guilt as a matter of law.

■ The instruction given by the rule is directed to the Presiding Justice and not to the jury. In effect, the Presiding Justice is instructed not to enter judgment of acquittal in those cases where:

1. A defendant is charged with larceny or breaking, entering and larceny; and

2. A defendant is found in possession of goods which on the evidence in the case a jury could conclude beyond a reasonable doubt were stolen; and

3. The defendant's possession of such stolen goods is both recent and exclusive, and [4]

4. Other circumstances in the case do not give rise to a reasonable doubt as to the defendant's guilt as a matter of law.

■ Since the possession of stolen goods rule is the concern of the *Court* and *not of the jury,* we recommend in the future when a defendant is charged with either larceny, or breaking, entering and larceny, juries not be instructed concerning any *presumption* arising from recent and exclusive possession of stolen goods. Rather, juries should be told that as factfinders they have a right to draw reasonable inferences from facts proven beyond a reasonable doubt, that they have a right *to infer as a fact* a person having recent and exclusive possession of stolen goods is the thief unless upon all the evidence appearing in the case there arises a reasonable doubt as to the validity of the inference.

In other words, they may convict in reliance on the inference of fact arising from recent and exclusive possession of stolen goods *alone,* if as factfinders, they conclude on all the evidence such inference is valid and *if the inference convinces them of guilt beyond a reasonable doubt and not otherwise.*

The entry must be as to Henry L. Poulin, Jr.,

Appeal denied.

The entry must be as to Richard J. Poulin,

Appeal sustained.

New trial ordered.

4. For explanation of when possession may be deemed exclusive, see State v. Barrett, Me., 256 A.2d 666 (1969).