**STATE of Maine**

v.

**Robert GOVE.**

Supreme Judicial Court of Maine.

April 11, 1972.

Foahd J. Saliem, County Atty., Donald H. Marden, Asst. County Atty., Augusta, for plaintiff.

Wathen & Wathen, by Daniel E. Wathen, Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

On appeal. Appellant was indicted, tried before a jury and convicted of breaking, entering and larceny. (17 M.R.S.A. § 2103)

We deny the appeal.

On November 29, 1970, Hazel C. Brown closed her son's house for the winter. She occupied this house on a seasonal basis. On January 27, 1971, it was discovered that the front entrance had been forcibly opened by cutting the screen out of the screen door and "kicking in" the front door.

On the afternoon of January 27, 1971, prior to police knowledge of the break, appellant was arrested on an unrelated charge while riding as a front seat passenger in a car then being driven by his brother, Larry Gove; another brother, Richard Gove, was in the back seat with Erwin Pierce, a juvenile. During the ensuing investigation the police observed on the back seat of the car two pieces of china, partially covered by a jacket. It was noted that appellant's brother, Richard, was leaning over the china, "holding this jacket in place." The officer testified:

"At this point it appeared he was covering something, so I took a quick look to see what it was and I could see right next to the door, part of the object that

was being covered was still left open and I could see a bluish china object."

The appellant had also been indicted for another violation of this statute and the two cases, without objection, were consolidated for trial. The other dwelling involved, belonging to one Joseph Suga, Jr., was situated some five miles distant from the Brown property. The evidence established beyond any doubt that the Suga home had been broken into sometime between the hours of 7:30 and 11:30 a. m. on January 27, 1971, and a .410 shotgun stolen therefrom. Entry into the Suga property had been accomplished by "kicking in" a door.[1]

Because none of the car occupants had a key to the trunk and because one could not be found in the vehicle, it was forcibly opened by a police officer. He discovered therein the shotgun stolen from the Suga residence.[2] He also discovered a radio and numerous pieces of china comparable in pattern to that which was on the rear seat of the car. All of the china, as well as the radio, was identified by Mrs. Brown as coming from her house.

A fifteen year old boy, Erwin Pierce, was a prosecution witness. He recounted having first seen the appellant on January 27th, at 11:30 a. m. in Augusta (nine miles from the Brown home). The appellant was then driving the same vehicle that he was a passenger in when arrested; the brother, Richard (who was attempting to conceal the china when defendant was arrested), being the only other occupant. Mr. Pierce got in the back seat, noted the china, and described it as being partially covered by a coat. This witness remained with the appellant continuously in Augusta from this encounter until the arrest.

Although it was stipulated that the appellant was not the owner of the car and al-

though the record does not explain the circumstances under which the car was being used by the appellant and his brothers, Mr. Pierce, who had known the "Gove boys" "pretty close to eight years" did answer the question, "[w]hat were they riding in?" by responding "[i]n Robert's [appellant's] car." The State trooper who stopped the car originally, testified, "and Larry gave me his license and the registration for the car. . . ." Larry Gove, appellant's brother, was driving the car at this time.

The Brown house was located on a public highway. Another son of Mrs. Brown actually lived in the immediate vicinity, as described by these words, "lives next one down," or, "just below, on the opposite side of the road, just below his mother's house." On January 27th this son called his brother, the owner, and reported the break to him, but the record is silent as to who reported the incident to the police.

The appellant did not elect to be a witness, nor did he present any defense testimony otherwise.

Because there was no direct evidence placing the appellant at the Brown home or involving him in the physical activity required to enter the building and remove the stolen property, the State relied upon the inference which is said to arise when one is found in recent and exclusive possession of goods proved to have been stolen.

"[W]hen one is found in 'recent' and 'exclusive' possession of stolen goods, it is *proper* for a jury to infer as a fact the person so found in possession was the thief.

The fact of such possession is a sufficient circumstance upon which to rest a verdict of guilty, if it convinces of guilt beyond a reasonable doubt and not otherwise. . . ." State v. Poulin, (Me. 1971) 277 A.2d 493, 500.

1. This indictment was ultimately dismissed. However, the facts involving the intrusion into the Suga home were submitted to the jury without objection when it considered the case under review.

2. At trial there was no objection to this procedure, nor was there any ultimate objection to the introduction of the shotgun in evidence.

"[T]he possession of stolen goods subsequent to the theft creates inference of guilt, not only of larceny . . . but also of the breaking and entering when larceny is a part of such greater crime. . . ." State v. Saba, (1942) 139 Me. 153, 158, 27 A.2d 813, 816.

■ The Justice below was explicit in his admonition to the jury that it must be satisfied beyond a reasonable doubt of the defendant's possession of stolen property. His charge was entirely in accord with the established doctrine that while possession must be exclusive, it may be jointly with another. He pointed out:

"[T]he word 'exclusive' does not mean that the possession must be separate from all the others. Possession may be personal and exclusive, although it is in joint possession of two or more persons, if they are shown to have acted in concert, to have been participants in the crime, the possession of one participant being the possession of all."

No objections were registered to this instruction, nor could any have been successfully maintained. State v. Barrett, (Me. 1969) 256 A.2d 666; see also State v. Russo, (1928) 127 Me. 313, 143 A. 99.

In many respects the facts before us are identical with the facts in State v. Poulin, supra. Both Poulin and Gove were operators of vehicles. Both had ostensible legal authority to be in possession of, and driving, these cars. Both were observed within approximately the same distance of the illegal entries. In both cases stolen personal property was on the rear seat. Poulin is flat authority to support, unexplained, the conclusion that the defendant was in possession of stolen property.

■ However, the appellant contends that the interval of fifty-nine days between the closing of the house on November 29, 1970, and the discovery of the illegal entry on January 27, 1971, makes impermissible

an inference that the personal property was "recently" stolen.

Applying the well established circumstantial evidence rule to these facts to determine the actual time of the breaking and entry, the jury had many circumstances from which it could find beyond a reasonable doubt (as it must) that, in relation to the time of finding the defendant in possession of the stolen china, it was recent. For example:

1) The cut screening and open front door in close proximity to the neighboring dwelling occupied by Mrs. Brown's son.

2) The extreme unlikelihood that this condition could have existed for any appreciable time unnoticed, particularly with a family member living so closely to the property.

3) The telephoned report to the owner on January 27th by this son.

4) The coincident kicking in of the doors on both the Suga and Brown residences.

5) The coincidence of finding the Suga shotgun commingled with Mrs. Brown's other property in the trunk of the car.

6) The china in the back seat of the car partially covered with a coat and the unexplained attempt of appellant's brother, Richard, to conceal it when the car was stopped by the officers.

7) The fact that no keys were available at the police station to unlock the trunk (see, supra, #5), indicating that the trunk must have been locked on January 27th after the gun was stolen and after 7:30 a. m. on this date.

8) Mr. Pierce testified that the china was in the back seat when he entered the vehicle at 11:30 a. m., and that the trunk was never opened thereafter.

If we assume that the jury appropriately concluded that the appellant was in pos-

682

session of stolen property, was such possession "recent" in terms of the alleged date of the crime? As we view these unexplained and uncontradicted facts, we would usurp the province of the jury were we to conclude a lack of evidence of recency, assuming this issue was properly presented to the jury.

The Justice below, without objection, carefully and correctly explained the import of the word "recently" in the context of the presumption which arises from evidence of recent and exclusive possession of stolen property:

> "The term 'recently' is a relative term and has no fixed meaning. Whether the property may be considered as recently stolen depends on the nature of the property and all the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft, the more doubtful becomes the inference which may be reasonably found from unexplained thefts. But if you find beyond a reasonable doubt from the evidence in this case that these items described in the indictment were stolen, and that while recently stolen, the property was in the possession of the accused, you may from those facts draw the inference not only that the property was possessed by the accused with knowledge that the property was stolen, but also that the accused participated in some way in the theft of the property, unless possession of the recently stolen property by the accused can be explained to the satisfaction of the jury by other facts and circumstances in evidence in the case."

As was said in *Poulin, supra,* 277 A.2d at 498: "There was no evidence in the case which would serve to explain the Appellant's possession of the stolen property consistently with innocence."

The entry is

Appeal denied.

All Justices concurring.