STATE of Maine

v.

Donald JAMES.

Supreme Judicial Court of Maine.

Dec. 4, 1973.

Donald H. Marden, County Atty., Augusta, for plaintiff.

Samuel H. Cohen, Waldoboro, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

Donald James has appealed from his conviction, after a jury trial, of a violation of the provisions of 17 M.R.S.A. § 2103 (Breaking, Entering and Larceny). We deny the appeal.

Briefly summarized, the evidence established beyond any doubt that a dwelling house was burglariously entered and "an antique muzzle loader, engraved with the name 'Theodore Barton', of the value of fifty dollars" was stolen therefrom. The firearm was described by its owner, Arlene Gilbert, as "an old fashioned musket" that "had been a family heirloom and had been passed down from my ancestors", Theodore Barton being her "great, great, great uncle."

A state's witness, Frederick A. Pierce, testified that he first saw the stolen gun in the trunk of the appellant's car in a parking lot, where appellant made an initial ef-

fort to sell it to him. The jury could fix this date as being *thirty-three (33) days* subsequent to the burglary. Approximately three weeks thereafter, according to Pierce, he did consummate the purchase, the consideration being "$15.00 and a case of beer," appellant insisting on cash rather than payment by check. Pierce ultimately delivered the gun to one Sheldon Rowe on his promise to pay $15.00 therefor (which was never paid) and Rowe, recognizing the gun, returned it to the owner.

Arguing that certain inconsistencies existed in the evidence presented by the state, and that the state had not proved ownership as alleged in the indictment, the appellant moved for a judgment of acquittal at the close of the state's case.[1] This motion was denied and the appellant elected to testify.[2]

Appellant categorically denied having seen the antique firearm until the day of the trial. He did admit meeting Pierce on the day that Pierce claimed he purchased the gun, and did admit being in the same store where Pierce testified he cashed a check with which to buy a case of beer and pay for the gun. At a later time, appellant testified, he met Pierce who attempted, after telling him that "he had sold a gun and come to find out it was hot," to get him to go to the police and tell them that he (James) had "bought the gun downtown and sold it to him (Pierce)." Appellant's response was this: "So, I said sure, Fred, and took off. I told somebody about that. They said, no, you better stay away from him."

The jury was faced with a pure question of credibility. To reach a guilty verdict a clear choice between the testimony of Pierce and James had to be made. Obviously, the jury accepted the Pierce testimony and rejected as completely unsatisfactory that of the appellant. We note the obvious, namely: the appellant introduced

*no evidence* to explain his possession of the stolen property; rather, he denied without reservation ever being in possession of it.

Appellant, in his brief, focuses his prime attack upon the verdict in this language:

"Thus, the central issue arises whether the use of [the] inference [from proof of recent possession of stolen property] at all amounts to a violation of the Due Process Clause of the 14th Amendment, especially in the light of In re Winship, 397 U.S. 358, 25 L.Ed.[2d] 368, 90 S.Ct. 1068 (1970)."

It has long been recognized in Maine that recent and exclusive possession of stolen property gives rise to an inference, "not only of larceny, State v. Merrick, 19 Me. 398; State v. Russo, 127 Me. 313, 143 A. 99, but also of the breaking and entering when larceny is a part of such greater crime. . . ." State of Maine v. Saba and Korbett, 139 Me. 153, 158, 27 A. 2d 813, 816 (1942). For a collection of Maine cases recognizing this doctrine, *see* State v. Mosher, 270 A.2d 451, 453–454 (Me.1970). *See, also,* State v. Poulin, 277 A.2d 493 (Me.1971), holding: "The fact of such possession is a sufficient circumstance upon which to rest a verdict of guilty, if it convinces of guilt beyond a reasonable doubt and not otherwise." 277 A.2d at 500.

Addressing itself to an attack on the traditional common law inference of guilty knowledge rising from unexplained possession of stolen goods, the United States Supreme Court has recently upheld instructions which permitted a conviction based upon such an inference. In Barnes v. United States, 412 U.S. 837, 845, 93 S.Ct. 2357, 2363, 37 L.Ed.2d 380 (1973), Mr. Justice Powell, speaking for a majority of the Court, stated: "Such evidence [unexplained possession of recently stolen prop-

---

1. Appellant did not then premise his motion on the argument that proof of possession of the firearm thirty-three days subsequent to the burglary was not sufficiently recent to

support an inference of guilt arising from possession of goods proven to have been stolen.

2. Mr. James was represented by retained counsel both at trial and on appeal.

erty] was clearly sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen. Since the inference thus satisfies the reasonable doubt standard, the most stringent standard the Court has applied in judging permissive criminal law inferences, we conclude that it satisfies the requirements of due process."

We are unable to distinguish, in terms of due process, between the inference deemed constitutionally valid in *Barnes* and the inference here under attack. It, likewise, satisfies the "requirements of due process."

■ It is next argued that the interval of *thirty-three days* between the burglary and the first evidence of appellant's possession of the stolen property "is of sufficient time to make the [inference] of guilt by 'recent and exclusive possession' impermissible as a matter of law."[3]

In none of the Maine cases where the concept of "recency" has been discussed is there any intimation that the length of time intervening between the larcenous act and proof of possession of stolen property, is, *per se,* determinative. Rather, the word has been given a *relative* meaning, thus suggesting that it is not an absolute, or independent, concept but, rather, is dependent on the particular circumstances of each case.

We approved language in State v. Gove, 289 A.2d 679, 682 (Me.1972) which dealt with this term, namely: "The term 'recently' is a relative term and has no fixed meaning. Whether the property may be considered as recently stolen depends on the nature of the property and all the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft, the more doubtful becomes

the inference which may be reasonably found from unexplained thefts."

Consistent with this approach are cases from other jurisdictions. Typical, is Cason v. State, 230 Md. 356, 187 A.2d 103 (1963), where a newly purchased transistor radio had been stolen from an automobile some four months prior to its discovery in the possession of the accused, who then furnished two inconsistent explanations thereof. Sustaining the conviction, the Maryland Court said: "The lapse of something over four months of time, under the circumstances of this case, was insufficient to destroy the probative effect that the trier of facts was entitled to give to the 'recent' possession of the stolen property by the accused, in the absence of a reasonable explanation of his possession." 187 A.2d at 104.

The Florida Court, faced with evidence of possession of a revolver between six months and a year after its theft, accompanied by a reasonable explanation from the accused, declared, in reversing a conviction, "[w]hether or not stolen property found in the possession of a person will be regarded as 'recently stolen property' . . . when it is shown to have been stolen a considerable period earlier . . . may depend on the nature of the property,[4] the facility of its handling and transfer and other factors." Robinson v. State, 257 So.2d 300, 302 (Fla.1972).

Dealing with an interval of thirty days between the theft and discovery of postage stamps and an unacceptable explanation of the possession thereof, after finding the thirty days "well within the period of time that possession gives rise to a permissible inference of guilty knowledge", the Federal Court for the Eighth Circuit suggested several dependent circumstances which

---

3. At the conclusion of the evidence appellant's counsel stated: "I renew my motion, the same thing as before." This motion was denied. We consider this as a motion for judgment of acquittal based on the insufficiency of the evidence to sustain a conviction. Rule 29(a), M.R.Crim.P. The issue of the sufficiency of the evidence to support the verdict is thus

properly before the Law Court. State v. Pratt, 309 A.2d 864 (Me.1973).

4. The revolver was described as a "two dollar pistol which can be passed hand to hand almost as readily as a pack of cigarettes." 257 So.2d at 302.

should be considered when dealing with the concept of "recency", namely, "In applying the rule respecting possession of recently stolen property the length of possession along with all the other facts and circumstances must be considered, as the type and kind of property, the amount or volume thereof, the ease or difficulty with which it may be assimilated into legitimate trade channels, including the circumstances under which the property is alleged to have been acquired." Aron v. United States, 382 F.2d 965, 971 (8th Cir. 1967). *See, also,* United States v. Gordon, 421 F.2d 1068 (5th Cir. 1970); United States v. Coggins, 140 U.S.App.D.C. 134, 433 F.2d 1357 (1970).

■ Measured by these standards, the evidence in the record supports the decision of the Justice below in denying the motion for judgment of acquittal. State v. Poulin, *supra.* An antique firearm in the possession of a non-dealer is not readily "assimilated into legitimate trade channels", particularly when bearing an identifying name on the stock; neither are such articles usually carried in the trunks of automobiles, and offered for sale on a cash basis only for "$15.00 and a case of beer." These facts, combined with a complete failure to explain such possession, certainly would support a jury finding of guilt based on the permissible inference that the possessor was, in fact, the burglar. State v. Saba and Korbett, *supra.*

■ Finally, appellant has argued that, although he registered no objection to the instructions given the jury as required by Rule 30(b), M.R.Crim.P., the errors therein contained were so seriously prejudicial to him that manifest injustice resulted, and under Rule 52(b) M.R.Crim.P., he is allowed to urge such errors on appeal. State v. Pratt, *supra.* The thrust of this argument is this: "But the use of the instruction on [inference] of guilt by recent possession based on a case of thirty-three days between identification of the goods stolen and possession of the accused is error." [5]

In our previous discussion herein we have held that such an instruction was mandated by the circumstances of this case, thirty-three days not being sufficiently remote in time from the theft, combined with the other facts, to make the inference of guilt from possession impermissible. A careful reading of the instructions actually given indicates no prejudicial error.[6]

The entry is:

Appeal denied.

All Justices concurring.

---

5. Quotation from appellant's brief.

6. In State v. Poulin, *supra,* 277 A.2d at 500, it was suggested that jury instructions thereafter eliminate the word "presumption", suggesting that "inference" is a more appropriate word. Additionally, it should be understood that *Poulin,* rather than establishing a standard for instructing a jury, was directed at the circumstances under which a presiding justice should, or should not, grant a motion for judgment of acquittal.

In State v. Gove, *supra,* 289 A.2d at 682, while we quoted the exact language of the jury instructions given, we were dealing primarily with the issue of "recency" under the unique facts of that case.

Since we have tried to point out herein that the word "recent", in the context of being in possession of stolen goods, is an adjective that is not limited by the element of time alone, but is dependent, in its true meaning, on the divergent facts of each case, we deem it appropriate to suggest an instruction in general terms, that, in our judgment, correctly postures this issue for a jury. Because each case is factually unique, and because there are several criminal offenses where the use of this inference may be permissible, a blanket endorsement of specific language is impractical. However, we do recommend the general language found in the *Appendix* to Pendergrast v Uunited States, 135 U.S.App.D.C. 20, 416 F.2d 776, 790–791 (1969); certiorari denied, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed. 2d 243 (1969). *See, also,* United States v. Coggins, *supra,* 433 F.2d at 1362. The obvious *caveat* must be, as is well recognized by the trial bench, that divergent factual backgrounds may well require the general language approved in *Pendergrast* to be appropriately re-structured, or modified, to meet the specific demands of each case.