**STATE of Maine**

**v.**

**Alton Libby HAMM, III.**

Supreme Judicial Court of Maine.

Dec. 2, 1975.

Henry N. Berry, III, Dist. Atty., Peter Ballou, Annee H. Tara, Asst. Dist. Attys., · Portland, for plaintiff.

Murray, Plumb & Murray by E. Stephen Murray, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

At approximately 5:30 a. m. on December 31, 1973, two South Portland police officers stopped an International Harvester Travel-All which they believed closely resembled a vehicle that had recently been reported stolen from inside the International Harvester building in Portland. The officers' suspicions were verified when a brief inspection revealed that the vehicle identification number of the Travel-All was the same as that of the vehicle reported stolen. The driver of the Travel-All and its sole occupant, Alton L. Hamm, III, the defendant, could not produce registration or a license but claimed that he had borrowed the vehicle from his father. He was arrested for driving without a license and immediately taken to the South Portland Police Station. The vehicle was not searched at the time of arrest, but was driven to the South Portland Police Station by a third police officer, summoned for that purpose, who left it locked in the Police Station yard at approximately 6:00 a. m. The Portland Police Department was notified and a detective came to South Portland to view the vehicle.

The officers could see through the windows of the vehicle that it contained a large quantity of miscellaneous articles, partly covered by a blanket. Clearly visible was a stereo tape deck. A stereo tape deck had also been reported stolen from the International Harvester building.

Several hours after the defendant's arrest the officers, satisfied with the identity of the vehicle, turned it over to the Branch Manager of International Harvester, Inc. Before doing so, they removed from the vehicle what proved to be a varied assortment of clothing, books, paintings and antiques which the Branch Manager said were not the property of his company. These articles were placed inside the police station. They proved to have been stolen during a break at the home of Constantine Mallis in Portland a day or two before.

The defendant was subsequently charged with two counts of breaking, entering and larceny under 17 M.R.S.A. § 2103. The first count alleged that he broke and entered a building owned by International Harvester at 35 Bedford Street in Portland, stealing therefrom the Travel-All, a stereo tape deck and a radio. The second count alleged that the defendant broke and entered a dwelling house, the property of Constantine Mallis, and stole miscellaneous items.

A hearing on the defendant's motion to suppress the evidence obtained as a result of the removal of these articles from the Travel-All was held in the Superior Court for Cumberland County and the motion denied. The motion was renewed and again denied at the defendant's trial and the items were admitted into evidence over the defendant's objections. The defendant was convicted of both counts. He appeals to this Court, alleging (1) that the warrantless removal of the articles from the vehicle was an unreasonable search and seizure and in violation of the fourteenth amendment to the United States Constitution and art. I, § 5 of the Maine Constitution and (2) that the evidence was insufficient to prove International Harvester's ownership of the building into which he allegedly broke and entered, a necessary element of Count I. We deny the appeals.

■■■ We delay our consideration of the substantive issues to inquire into the threshold matter of the defendant's standing to challenge the legality of the search. While evidence seized in violation of the fourteenth amendment [1] (whereby the sanctions of the fourth amendment are visited upon the states) may be excluded from a criminal trial (*Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)), a defendant does not have personal standing to object to and procure the exclusion of incriminating evidence solely because he is aggrieved by its use against him at trial. *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). The defendant can claim the protection extended by the fourth amendment only if the search and seizure violated his constitutional rights. *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). This Court has likewise emphasized the personal nature of the right by limiting standing to invoke the fourth

amendment protections against unreasonable searches and seizures to

"(1) persons against whom the search was directed, (2) persons legitimately on the premises searched against whom the fruits of the search are intended to be used, or (3) persons charged with illegal possession of the property seized and sought to be suppressed." *State v. Cadigan*, Me., 249 A.2d 750, 753 (1969).

To the extent the fourth and fourteenth amendments protect the individual citizen, they impose a corresponding restraint upon the actions of the government in the exercise of its police powers. From the personal nature of fourth and fourteenth amendment rights there follow two distinct but interrelated facts. First, and obviously, the rights guaranteed by the fourth amendment extend to only the specific occasion of the individual act; they do not exist *in abstracto*. Second, not every citizen is legally empowered to claim their protection, for the proper assertion of fourth amendment rights is in every case determined by the particular manner in which the government's activities have reached the interests of the individual. We do not mean that the capacity, or standing, of a criminal defendant to challenge a search and seizure depends upon the merits of his claim; a police investigation may be constitutionally flawless and yet the defendant may be entitled to pursue, however fruitlessly, his objections before the court. We mean, rather, that because the defendant's capacity to claim the protection of the fourth amendment is a correlative of the right asserted, the law of standing is informed by the principles of the substantive law invoked by the defendant in urging his claim.

Fourth amendment requirements at one time were bottomed upon traditional con-

---

1. Although confined to the principles of the fourth amendment to the federal constitution, our discussion is equally applicable to the corresponding state constitutional provision, art. I, § 5 of the Maine Constitution. *See, State v. Warner*, Me., 237 A.2d 150 (1967).

cepts of property law. *See, Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1912). An exclusively proprietal fourth amendment right was finally rejected, however, under the constitutional rubric that "the fourth amendment protects people, not places." *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, 583 (1967). The Court in *Katz* broadened the scope of fourth amendment protection to include those areas which the individual attempts "to preserve as private." *Id.* This expanded substantive right was further articulated the following year in *Mancusi v. DeForte, supra,* 392 U.S. at 368, 88 S.Ct. at 2124, 20 L.Ed.2d at 1159, when the Court clarified its position on standing:

> ". . . [C]apacity to claim the protection of the [Fourth] Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of privacy from governmental intrusion."

The State, relying upon our recent decision in *State v. Boutot,* Me., 325 A.2d 34 (1974), urges that the defendant cannot challenge the search of a vehicle stolen by him. Boutot, charged with homicide and assault with intent to kill, was denied standing to object to the introduction into evidence of a gun seized by the police from an automobile that he had earlier stolen from one of his victims. We characterized the issue before us as follows:

> "It seems to us that the question which determines the thief's standing is not whether he has gained some proprietary interest in the property greater than that of anyone but the true owner but, rather, whether the search was of an area where, under all the circumstances, the thief had a reasonable expectation of freedom from governmental intrusion." 325 A.2d at 41.

We were aware when deciding that case of Justice Harlan's concurrence in *Katz* that the requirements of the fourth amendment are twofold: first, the defendant must have an actual expectation of privacy in the invaded area and, second, society must recognize that expectation as reasonable. *Katz v. United States, supra,* 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588. Thus, we concluded that the defendant, who was using the car for the criminal purpose of escaping the scene of the crime with a hostage, could not have entertained any reasonable expectations of freedom from governmental intrusion. Regardless of his actual expectations, the defendant in *Boutot* was not within the purview of the guarantees extended by the fourth amendment and was not entitled to standing to assert those protections at trial.

The defendant here claims that, unlike Boutot, he was not in the process of committing a crime when apprehended and, therefore, he had a proprietary interest in the vehicle of sufficient strength to confer upon him standing to contest the legality of the search. To support this assertion, the defendant relies upon dictum in *Boutot* where we granted

> ". . . the correctness of the assertion of the *Cotton* court that even a thief can gain a limited proprietary interest in the property he has stolen." 325 A.2d at 41.

This language from *Boutot* may have misled the defendant to frame the issue improperly.

Some courts have indeed given the thief standing to object to the search of a stolen automobile where he had possession of the car and *claimed* it as his own. There, the thief's capacity to claim the protection of the fourth amendment was grounded in the traditional property concept that a trespasser who has taken possession of the premises acquires possessory rights against all but the true owner. *Cotton v. United States,* 371 F.2d 385 (9th Cir. 1967). This Court cannot adopt that reasoning.

We recognize that in some circumstances a thief can have a legally recognized interest in stolen property. For example, one who steals from a thief,

thereby disturbing his otherwise illegal possession of property, may be guilty of larceny. *State v. Pokini,* 45 Haw. 295, 367 P.2d 499 (1961). In light of recent Supreme Court cases, however, we are no longer compelled to base our decisions about standing exclusively upon common law concepts of property interests. *Mancusi v. DeForte, supra; Katz v. United States, supra; Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Because the defendant's right to privacy does not, in *Katz,* depend upon whether the government is guilty of a technical trespass it follows that privacy is a personal and not a property right. Being personal, the right to privacy, under the fourth amendment, is not dependent upon possession alone, but upon the reasonableness of the defendant's expectation of freedom from governmental intrusion. While traditional property interests may determine the reasonableness of the expectation —a person may be more justified in assuming a privacy right in his or her own home than in a public place—those interests are no longer strictly controlling. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States, supra,* 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582.

 In more familiar language, we may say that because possession alone is an insufficient basis for supporting a reasonable expectation of privacy, this defendant cannot claim that he is a person "against whom the search was directed." In *Boutot,* we defined that class of persons as those

". . . who have *reasonable* and *justified* expectations that, because of their ownership, the nature of their occupancy or other possessory right, or their lawful presence on the property, their privacy in the area will not be disturbed . . .." (Emphasis added.) 325 A.2d at 38.

Our emphasis upon possessory interests in that definition was intended to indicate the type of relationship in the invaded property that could give rise to a reasonable expectation of privacy. Society must, of course, recognize the legitimacy of such possessory rights. This defendant, however, had no such possessory rights. The owner was entitled to the return of his stolen vehicle and the police, to whom it had been reported stolen, were obligated to make reasonable efforts to effect its return, including taking it into their possession. The defendant does not question the right of the police to take possession of the vehicle—he disputes only their right to intrude inside it. Yet the authority to detain the car and intrude into it derive from the same source, the owner's request for governmental assistance. The thief, on the other hand, derives no rights from the owner and his naked, unlawful possession of the vehicle gives him no expectation of privacy as against the police, whose possessory rights are superior to his. *See, United States v. Zaicek,* 519 F.2d 412 (2d Cir. 1975). Because we are here concerned only with the scope of the police's interest in the vehicle in relation to the defendant's, it is unnecessary to circumscribe the exact limitations upon the right of the police to enter and search a recovered stolen car as against the owner or someone who may have rights derived from the owner.

We are satisfied that this defendant, in wrongful possession of a stolen car and using that car to transport goods he had stolen from another victim, had no justifiable expectation of remaining free from governmental intrusion into the vehicle once it was recovered by the police. That society does not regard his expectations as reasonable evidences its recognition of the legal interest every true owner retains in his stolen property and of the government's obligation to uphold that interest.

Finally, this is not a case within the "automatic standing" rule of *Jones v. United States, supra,* which allows the defendant standing without his showing any interest in the premises searched or the property seized if possession of the seized goods is an essential element of the crime charged.

The defendant argues that because the State would not have been able to convict him had he not had possession of the stolen property, possession is thus an essential element of breaking, entering and larceny, the offense charged.

■ Although possession of the stolen property is strong evidence that the defendant committed the crime (*State v. O'Clair*, Me., 256 A.2d 839 (1969)) and doubtlessly aided in his conviction, it is not an essential element of the crime because conviction of breaking, entering and larceny is possible even though the goods may have been found in the possession of another. *See, State v. Morin*, 131 Me. 349, 163 A. 102 (1932). Possession is merely an evidentiary fact which permits the jury to infer that the defendant is guilty of breaking, entering and larceny. *State v. James*, Me., 312 A.2d 531 (1973); *State v. Poulin*, Me., 277 A.2d 493 (1971). Merely because a conviction was obtained as a result of the defendant's possession of incriminating evidence would not warrant our concluding that possession of such evidence is an element of the crime charged. Such a holding would lead to the absurdity that the elements of a crime would be determined more by the fortuities of the circumstances under which a defendant was arrested than by common law or statutory definition.

We therefore do not reach the defendant's claim that a search of the vehicle violated his constitutional rights as we find he was without standing to assert it.[2]

■ The defendant's second claim is that the evidence did not show beyond a reasonable doubt that ownership or lawful possession of the International Harvester building was in someone other than the defendant, as required for a conviction for a violation of 17 M.R.S.A. § 2103. The indictment charged that the building, located at 35 Bedford Street, Portland, was owned by the International Harvester corporation. The defendant claims that the evidence did not prove this fact and hence failed to conform to the allegations in the indictment, a requirement long recognized in this State. *State v. Beaudoin*, 131 Me. 31, 158 A. 863 (1932). We think that the evidence did permit a jury to conclude beyond a reasonable doubt that International Harvester did have a possessory interest in the building into which the defendant was charged with breaking and entering sufficient to support his conviction.

■ Ownership need not be proven directly, but may be established by circumstances and inferences. *State v. Bickford*, Me., 308 A.2d 561 (1973); *State v. Small*, Me., 267 A.2d 912 (1970). 15 M.R.S.A. § 752 permits a conviction for any offense involving real property to stand if the State shows constructive or actual possession of the property by the person in whom the indictment alleged ownership. The State presented three witnesses each of whom testified that his employer was International Harvester, Inc., that his place of employment was 35 Bedford Street in Portland and had been for a number of years. The Branch Manager testified that this was a branch of International Harvester, Inc., and was located at 35 Bedford Street, Portland. The company's accountant testified that only he, the Branch Manager, Parts Managers, Service Managers and four salesmen had keys to this building. The International Harvester, Inc.'s truck was kept inside the building. Faced with this testimony, reasonable jurors would be hard pressed not to conclude that International Harvester, Inc. had at least constructive possession of the building at 35 Bedford Street.

The entry will be:

Appeals denied.

---

2. Thus it becomes unnecessary for us to decide whether the officers' removal of unclaimed articles from a stolen vehicle which they are returning to its owner constitutes a search and seizure, or, if it was a search, whether it was valid under the rule of *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).