No. 30,213.

THE STATE OF KANSAS, *Appellee*, v. JESSE CALLABRESI, *Appellant*.

(11 P. 2d 725.)

Opinion filed June 4, 1932.

*David Ritchie*, of Salina, for the appellant.

*Roland Boynton*, attorney-general, *R. O. Mason*, assistant attorney-general, *Morris Johnson*, county attorney, and *F. J. Brettle*, assistant county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Jesse Callabresi was convicted of grand larceny of wheat, and appeals.

W. B. Shank lived about four miles northeast of New Cambria. He farmed land south of New Cambria on which there was a granary. Before harvest in 1930 he put in the east end of the granary twenty-five bushels of white wheat he had raised on the home place in 1929. When he harvested the wheat on 'the land south of New Cambria, he filled the bin, and put new wheat on top of the white wheat. He called the new wheat Blackhull wheat. When he finished harvesting he had about 200 bushels in the granary. About August 15 he took out a load of wheat for seed, and later he took out four or five bushels more, about sixty-two bushels in all. In taking out wheat he did not get down to the white wheat. On September 5 he found the granary practically empty. There was some wheat in the bin and on the ground.

The Shank home place was west of the Niles road. Defendant's brother, Earl Callabresi, lived in Salina, but farmed land east of the Niles road, opposite Shank's land. In the summer of 1930 defendant lived alone on his brother's land. There was a granary on the place which contained wheat owned by Earl Callabresi, which was part of Earl Callabresi's 1930 crop.

464

When Shank missed his wheat, he made an investigation, and learned defendant had sold three loads of wheat to a dealer at Niles whom neither defendant nor Earl Callabresi were in the habit of patronizing. One load was delivered on August 14, another on August 15, and another on August 30.

On September 7 the sheriff and deputy sheriff visited Earl Callabresi's granary. It contained red wheat, and inside the door on top of red wheat was a pile of mixed wheat—white mixed with red. The sheriff took a sample of the mixed wheat, and then engaged defendant in conversation. The abstract of the sheriff's testimony shows the following:

"I saw Jesse Callabresi, asked if he was getting ready to sow wheat, and he said he was. . . . I asked Jesse Callabresi if he had any wheat sown last year, and he said he didn't have. I asked him if Earl had any dark hard wheat that would do for seed. He said he had 300 bushels, and I pulled the sample out of my pocket and asked if that was the kind of wheat Earl had, and after hesitating quite a while, he said it was. I had obtained that sample out of the granary where this came from. I asked him where the white grains came from that were in there, as it was dark hard Turkey. He said that came out of the slew, that was water-killed over on Earl's place, where the wheat was killed. I asked him if he had been selling any wheat, and he said he had not. I asked him where he got the load he sold at Niles on the 30th of August, and he said he got it out of Earl's granary. He further said he did not raise any wheat."

Defendant also told the sheriff he had no wheat. Earl Callabresi testified that all the wheat put in the granary belonged to him, and he did not sell any of it. Jesse Callabresi had no interest in the crop, and no interest in the wheat in the granary. On September 23 Earl missed some wheat from the granary, and afterwards found out Jesse had taken it. Earl did not tell Jesse he might take it, and Earl did not know Jesse had taken it until long after it was taken.

There was a trailer at the Callabresi place. The trailer box was larger than a wagon box, and would hold about 70 bushels of wheat. The quantity of wheat sold by defendant on August 14 was 67 bushels; on August 15, 68 bushels; and on August 30, 70 bushels and 20 pounds. Defendant testified this was wheat from Earl Callabresi's granary. Of course it was, and if all the Shank wheat were then put in the Callabresi granary, it would lack 62 bushels of making up the deficiency. When the sheriff was at Callabresi's place on September 7, there was a little wheat in the trailer. It was white wheat mixed with red, and the sheriff took a sample.

On September 13 defendant undertook to sell another load of wheat from Earl Callabresi's granary. Defendant used the trailer, which was drawn by a Ford automobile. On the way to Niles the condenser of the Ford engine burned out. Defendant procured a tractor, and took the wheat back to the granary. He testified he scooped the wheat out of the granary and into the trailer through the granary door, and then out of the trailer and into the granary through the granary door.

The deputy sheriff went back to the granary on September 23. The appearance of the wheat in the granary was about the same as it was on September 7. Inside the door was white wheat mixed with red, and the deputy sheriff took a sample of it.

There was testimony that the wheat defendant sold on August 14 and 15 was ordinary red Turkey wheat, and there was testimony it was dark wheat. There was testimony the wheat he sold on August 30 was Turkey red wheat, and there was testimony it was not Turkey wheat, it was red wheat. It will be recalled the sheriff asked defendant if Earl Callabresi had any dark hard wheat, and defendant said Earl had 300 bushels like the sample the sheriff had taken from the granary, which the sheriff described as dark, hard Turkey. There was testimony the most of the wheat in Earl's granary was dark wheat, and there was testimony it was red wheat. The samples taken from the granary and the trailer were introduced in evidence. There was no testimony the name Blackhull wheat was descriptive of the color of the thrashed grains. A sample of wheat remaining in the Shank granary was taken from the east end of the granary, where the white wheat had been placed. Another sample was taken from the ground in front of the Shank granary. Still another sample was taken from the west end of the granary, where there had been no white wheat. These samples were introduced in evidence. No witness testified specifically to any marked difference between a mixture of white and other grains from the Shank granary and a mixture from the Callabresi granary. The jury saw the wheat, and so far as this court knows, the mixtures were the same.

When trapped by the sheriff, defendant explained the presence of white wheat in the Callabresi granary by saying the white grains were from water-killed wheat, and defendant offered testimony that the white grains were red grains which were bleached. The director of the state seed laboratory at Manhattan and the state

grain inspector at Salina testified the white grains were not bleached, they were white by nature, and they were a distinct variety, a class established by the United States department of agriculture under the grain standard act.

The white wheat was soft wheat. Earl Callabresi testified his red wheat was mixed with some soft wheat; some of the heads of Shank's soft wheat blew across the road into Earl's hard wheat. Shank testified his white wheat was raised half a mile or more from the Callabresi land, and there never was any white wheat near the Callabresi land.

Defendant contends the evidence was not sufficient to identify him with theft of the wheat, and in any event he could not be convicted of more than petty larceny, the twenty-five bushels of white wheat being worth less than $20.

The white grains of wheat in the Callabresi granary belonged to Shank, and had been stolen. In the Shank granary the white wheat was covered with and partly surrounded by other wheat, and could not be removed from the granary and carried away separately. All the wheat in the granary was stolen, and the white grains necessarily identified the mass with which they became mixed and of which they were a part. On September 7 a pile of Shank's wheat was inside the Callabresi granary next to the door. On September 13 defendant exercised dominion over it. He shoveled it into a trailer, and started to market with it. Circumstances prevented him from selling it. He brought it back, and shoveled it into the granary. On September 23 the appearance of the wheat in the granary was the same as it was September 7.

The court gave an instruction relating to other larcenies. The only complaint made of the instruction is, there was no basis for it in the evidence. The taking and selling of each load of wheat belonging to Earl Callabresi constituted a larceny, and counsel for defendant does not favor the court with any authority to the contrary. Defendant's explanation of why he needed the money was not in accord with an explanation he had given at a former trial, and the explanation led to disclosure of the fact that he had changed the numbers on a stolen car, and had sold the car to his brother. Defendant testified that after selling his brother's wheat, he still needed money.

The judgment of the district court is affirmed.