STATE of Maine

v.

Bradley V. COLLAMORE.

STATE of Maine

v.

Franklin B. PRIOR.

Supreme Judicial Court of·Maine.

Feb. 9, 1972.

Alan C. Pease, County Atty., Wiscasset, for plaintiff.

Richard W. Elliott, Boothbay Harbor, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

These Defendants and Craig Prior were separately indicted by a Lincoln County grand jury for larceny of a canoe alleged to be of a value in excess of $100.00. They were tried together and the jury found each to be guilty of grand larceny. Only Defendants Collamore and Franklin Prior have appealed.

We deny their appeals.

Testimony was presented from which the jury could properly conclude that:

On June 23, 1970 a Mr. Romero was the owner of a canoe of the value of $200.00. On the afternoon of that day he placed the canoe behind his barn near Route 32 in Bremen. He was then absent from his home for four days and on returning he discovered that his canoe had been taken away. He reported the loss to the police.

The Defendants also live in Bremen.

On July 5, 1970, in Jefferson, Trooper Palmer of the Maine State Police observed Mr. Romero's canoe being tied on to the top of a pickup truck by Franklin Prior. The Defendants Collamore and Craig Prior were also beside the truck and soon they all got into the vehicle, with Craig Prior driving, and proceeded on. The officer stopped the truck and Craig Prior got out and met the officer at the rear of the truck. After a proper explanation to Craig Prior of Prior's right to silence and counsel, he asked Craig Prior where he had got the canoe. Craig Prior responded by loudly addressing Franklin Prior who was still in the cab of the truck, saying "Didn't we get it, Frankie, from a fellow by the name of Charlie that works at Lincoln Inn?" Franklin Prior answered "Yes."

Franklin Prior and Collamore then left the cab and joined Craig and the officer. The officer explained to them their rights as to silence and counsel. Franklin said, in the presence of the other Defendant, that he had bought the canoe from "Charlie" who worked at Lincoln Inn and that he was then on the way to sell it.

At trial Collamore and Franklin testified that "Charlie" was a stranger who drove a car with Massachusetts registration plates who approached the Defendants at the bar at Lincoln Inn on July 2 and offered to sell them the canoe for $25.00. Franklin denied that he had described "Charlie" as an employee at Lincoln Inn and testified that he thought "Charlie's" last name was Davenport. Although the officer said Franklin had told him they were on their way to sell the canoe when he arrested them, the Defendants testified they were proceeding to a lake where they intended to use it.

In the first of the two issues raised on their appeals, the Defendants urge us that the Presiding Justice's instruction to the jury concerning the probative effect which might be given to a finding of possession by the Defendants of recently stolen goods was a denial of due process.

■ As no objections were taken to the Justice's charge and no requests for instruction were made, the Defendants under M.R.Crim.P., Rule 30(b), are not entitled to assign as error the language of which they now complain. Nevertheless, as a constitutional question is presented, we will examine the Justice's charge. M.R.Crim. P., Rule 52(b).

The Defendants point out that the United States Supreme Court in In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) bars conviction of a crime except upon proof beyond a reasonable doubt by the State of every part necessary to constitute the offense charged. This holding, the Defendants say, makes impermissible our long-standing practice of permitting the possession by a Defendant of recently stolen goods to give rise to the presumption that the Defendant took them and with criminal intent.

The use of this presumption has been approved here numerous times since it was announced in State v. Merrick, 19 Me. 398 (1840), and as late as in State v. Mosher, Me., 270 A.2d 451 (1970), but we have been aware that the use of presumptions to prove elements of criminal offenses is recently in disfavor in some jurisdictions. In State v. Poulin, Me., 277 A.2d 493, n. 499 (1971) we said:

> "We view *Winship*, supra, as casting serious doubt on the constitutionality of presumptions in their impact on the criminal law, when used *with reference to a part necessary to constitute a crime.*"

In *Poulin* we carefully examined the use that a jury might properly make of the fact of possession by a Defendant of recently stolen property. We said there that while the problem is often one of semantics,

> " * * * [W]e recommend in the future when a defendant is charged with

either larceny, or breaking, entering and larceny, juries not be instructed concerning any *presumption* arising from recent and exclusive possession of stolen goods. Rather, juries should be told that as factfinders they have a right to draw reasonable inferences from facts proven beyond a reasonable doubt, that they have a right *to infer as a fact* a person having recent and exclusive possession of stolen goods is the thief unless upon all the evidence appearing in the case there arises a reasonable doubt as to the validity of the inference.

In other words, they may convict in reliance on the inference of fact arising from recent and exclusive possession of stolen goods *alone,* if as factfinders, they conclude on all the evidence such inference is valid and *if the inference convinces them of guilt beyond a reasonable doubt and not otherwise."*

We find nothing in *Winship* which suggests that an element of a criminal offense cannot be proved by an inference of fact which has been established beyond a reasonable doubt.

The trial in the Superior Court took place a few months before *Poulin* but the Presiding Justice appears to have adopted the same reasoning that this Court was later to follow. Although he referred to the principle we are now discussing as a presumption the Presiding Justice warned the jury that he was using the term in a different sense than when he used the word to define the presumption of innocence. His long, careful explanation of the term and its proper use was really a definition of an inference and *its* proper use. While he referred to it as a "presumption", a "rebuttable presumption", an "inference which you may but are not compelled to draw",

and an "inference or presumption", the distinction was one of semantics.

■ The use which he explained to the jury that they might make of the fact of possession of recently stolen property by the Defendants was essentially the use which we later approved in Poulin. The Presiding Justice cautioned the jury in clear language that the State must prove every element of the crime including the taking and the larcenous intent, beyond a reasonable doubt.

Our examination of the charge as a whole reveals no error.

■ At the time of the larceny and of the Defendant's trial and convictions, the statutes provided that if the value of the property stolen is found to exceed $100.00 the crime is a felony and punishable as such. (17 M.R.S.A. § 2101.) The jury found the Defendants guilty of grand larceny under proper instructions.

On September 23, 1971, while Defendants' appeal was pending, there became effective P.L.1971, Chap. 36, § 1 which increased the property value demarcation between petty larceny (a misdemeanor) and grand larceny (a felony) from $100.00 to $500.00. As the jury could not have found the value of the canoe to have been more than $200.00, the Defendants contend that their convictions must be reduced from felonies to misdemeanors because of the supervening legislation.

This issue has been before this Court in criminal cases twice recently. In Thompson v. Edgar, Me., 259 A.2d 27 (1969) we held that our general "savings" clause, 1 M.R.S.A. § 302,[1] applies to criminal proceedings and that with such a savings clause "the offender may be tried and punished under the old law". In State v. Al-

1. "The repeal of an act or resolve passed after the 4th day of March, 1870 does not revive any statute in force before the act or resolve took effect. The repeal of an act does not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any action, or proceeding pending at the time of the repeal, for an offense committed or for recovery of a penalty or forfeiture incurred under the act repealed. . . . ."

ley, Me., 263 A.2d 66 (1970) we particularly examined the words of the general savings clause, "incurred before the repeal". We held there that the "punishment, penalty or forfeiture" was incurred at the time the offense was committed and that the Defendant was exposed to the punishment provided at that time.

We are not persuaded that that holding is incorrect.

Here, as in *Alley,* at the time the offense was committed the acts of the Defendants were punishable as felonies and the sentences imposed upon them are unaffected by the 1971 amendment.

Appeals denied.