STATE of Maine

v.

Robert CREAMER.

Supreme Judicial Court of Maine.

June 23, 1976.

**604**

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Asst. Dist. Atty., Portland, Janet T. Mills, Law Student, for plaintiff.

Maurice Davis, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

PER CURIAM.*

The appellant and his brother, Gary Creamer, were indicted by a Cumberland County Grand Jury for the offense of receiving stolen goods, specifically, three chain saws which had been stolen from the shop of W. F. Eastman in Kezar Falls, Maine. The presiding Justice instructed the jury that its consideration of the appellant's guilt was to be limited to the two saws which the State had admitted into evidence. The appellant and his brother were found guilty of receiving the chain saws in violation of 17 M.R.S.A. § 3551. Robert Creamer appeals from the judgment entered upon this conviction. We sustain the appeal.

During the night of February 6, 1974, Woodbury Eldridge broke and entered the store of W. F. Eastman, stealing therefrom 39 chain saws. Mr. Eldridge was subsequently arrested and convicted of breaking, entering and larceny in the nighttime (*State v. Eldridge*, Me., 334 A.2d 862

(1975)) and Gary Creamer, also indicted for that offense, was acquitted.

Mrs. Eldridge testified that at approximately 2:00 a.m. on February 7 she observed the Creamers aiding her husband in carrying an unspecified number of chain saws ("Around twenty . . . roughly . . . I didn't count them . . .") into the Eldridge residence at 98 Bell Street, Portland. She further testified that after this initial delivery, she never saw either of the Creamers do any acts in relation to the saws although they returned to the house the next day. The appellant claimed that he had spent the night of February 6 at home and at no time was in the company of Woodbury Eldridge.

A short time later, 30 of the 39 saws were recovered by Detective Lombard of the Maine State Police. Twenty of these were obtained from Paul Theriault who testified that he had bought them from Mr. Eldridge at his home on Bell Street. Mr. Theriault testified that neither of the Creamers participated in this transaction with Mr. Eldridge. Detective Lombard recovered several more of the stolen saws from a Mr. Emery who was not a witness at trial. Two of the saws obtained from Mr. Emery were admitted into evidence against the appellant and were identified by the owner as part of the lot stolen from him on February 6. He also testified that the value of the two saws exceeded $500.-00.

The appellant moved, both at the close of the State's case and again, at the close of all the evidence, for a judgment of acquittal. He now argues that the court's denial of this motion was in error. We agree. The State cross-appeals, claiming that the Justice's limitation of proof to those stolen items physically introduced into evidence and his refusal to instruct the jury that it could consider any chain saws which the evidence showed had been

---

* The opinion in this case was written by Weatherbee, J. and adopted by the Court after his death.

in the appellant's possession and were also named in the indictment were in error.

### The Motion For Acquittal

■ 17 M.R.S.A. § 3551 provides:

"Whoever buys, receives or aids in concealing stolen property, knowing it to be stolen, shall be punished:

.   .   .   .   .   .

2. Value exceeds $500. If the value thereof exceed[s] $500, by a fine of not more than $1,000 or by imprisonment for not more than 5 years."

We have said that the State can successfully convict a defendant for receiving only if it can prove beyond a reasonable doubt the following three elements of the crime: (1) the property was stolen, (2) the defendant either bought, received or aided in concealing that property, and (3) the defendant knew the property was stolen. *State v. Thibodeau,* Me., 317 A.2d 172 (1974). As the factors of element two prescribe, the crime may be committed in any of three different modes. In the present case, the State does not argue nor does the evidence suggest that the appellant is guilty of buying stolen property. The issue on appeal, therefore, is whether the evidence shows beyond a reasonable doubt that Robert Creamer received or aided in concealing stolen property, knowing it to be stolen.

The appellant argues that the State did not establish beyond a reasonable doubt his possession of the stolen goods and that even if such possession were established the jury could not reasonably infer that he received those goods knowing them to be stolen. It is not contested, and we take it as proven, that the chain saws the appellant carried into the Eldridge residence on the night of February 6 were in fact stolen. The appellant's argument is essentially, therefore, that the State failed to prove beyond a reasonable doubt elements two and three.

The outcome of the defendant's appeal turns not on whether the defendant received and aided in concealing any of Mr. Eastman's stolen chain saws but, instead, on whether he received or aided in concealing any of the saws *which were named and described in the indictment.*

When we analyze the evidence we find that it shows that the 39 saws stolen from Mr. Eastman consisted of Jonsered models 52, 80 and 621, Frontiers and Tiltons. The grand jury indicted the defendant for receiving two Jonsered 80s and one Jonsered 621. Certainly, proof he received or aided in concealing Frontiers, Tiltons or Jonsered 52s would not satisfy the allegations of the indictment. Mrs. Eldridge observed an indefinite number of saws which she could not identify by make or model being carried into her home. Mr. Theriault observed there some Jonsereds (the models of which were undisclosed) and some Frontiers. He bought 20 of them, some of which were Jonsereds but which were not described as to model.

■ In order to arrive at a verdict of guilty of felonious "receiving", it was necessary for the jurors to find either that two of the saws being brought into the Eldridge home were Jonsered 80s or that one was a Jonsered 80 and one a Jonsered 621.[1] While the jurors could find from the evidence that all of these saws had come from the just committed Eastman break (*State v. Bey,* Me., 342 A.2d 292 (1975)), the 20 bought by Mr. Theriault having been so identified, it is not possible to say that they comprised *all* of the saws which had just been stolen from Mr. Eastman. Mr. Eastman lost 39, "more than one" of Model 80 and 621. The number which appeared at the Eldridge home is described as "around twenty" and (by Mr. Theriault) as "at least twenty-five". The evidence shows that an undisclosed number of Mr. Eastman's saws fell into the hands of Mr. Emery and *were not shown to have been* in the lot which the defendant helped

---

1. Otherwise, they could not have found the value to have been in excess of $500.00.

to conceal.[2] At least two of these (the two introduced as exhibits) were the models charged in the indictment.

In short, the absence of testimony from Mr. Emery leaves a gap in the State's chain of proof. "More than one" Jonsered Model 621 and 80 were stolen from Mr. Eastman and it doubtless seemed more likely than not to the jury that some of them were in the lot which came to the Eldridge house. However, this lot was not shown to have contained *all* of Mr. Eastman's saws and the possibility that the saws taken to the Eldridge home consisted of Frontiers, Tiltons and Jonsered 52s and *no* Jonsered 80s and 621s is not so remote as to exclude all reasonable doubt as to the defendant's guilt of receiving the saws alleged in the indictment.

Recognizing the weakness of its position, the State informs us that the appellant has waived this particular point by his failure to raise it in his brief. We must disagree. The appellant's brief proclaims its argument in the broadest possible terms, that is, "The State did not present evidence sufficient to establish appellant's possession of the stolen goods beyond a reasonable doubt." Although the argument principally addresses the issue of whether the appellant ever had legal possession of the saws Mrs. Eldridge saw him carry into the house—an argument of little merit—its focus is not so tightly defined that it does not occasionally wander to other points with sufficient clarity to raise, if not develop, them as legal issues.

*The State's Cross-Appeal*

The State cross-appealed, in accordance with 15 M.R.S.A. § 2115–A, contending that the presiding Justice erred in restricting the State's proof to the two particular saws which were introduced as exhibits and by limiting the jury's consideration to whether the State had proved the defend-

ant had received or aided in concealing *those* two saws.

The indictment identified the saws by make and model but not by serial number and the description in the indictment could fit *any* of the Jonsered 80s and 621s which were stolen from Mr. Eastman. The prosecuting attorney informed the Justice that the State was attempting to prove receipt or concealment of two Jonsered 80s and one 621 saws, not specifically identifiable by serial number, out of a number which had been stolen. The Justice ruled that the State must offer the actual saws into evidence and that the witnesses would have to identify them as those being received and charged in the indictment.

It is this ruling on the law from which the State cross-appeals. Since, as we have seen, the appeal of defendant must be sustained, the State's cross-appeal is viable, and we address its merits.

We agree with the State that the Justice held the State to too strict a standard of proof.

Although perhaps more persuasive to the trier of fact, there is nothing talismanic about physical evidence. In a prosecution for receiving stolen goods, it is not necessary that any of the goods allegedly received be introduced into evidence if they are otherwise identified. *Lindsey v. State,* 246 Ind. 431, 204 N.E.2d 357 (1965); *People v. Johnston,* 382 Ill. 233, 46 N.E.2d 967 (1943); *Holler v. State,* 219 Ind. 303, 38 N.E.2d 242 (1941); *see King v. United States,* 271 A.2d 556 (D.C.App. 1971).

The State is not required *per se* to obtain and present as exhibits property which it charges a defendant with stealing or with receiving and concealing. The State *may* be able to prove that a defendant acted illegally toward one of several

2. *We* know from the record in the *Eldridge* trial (*State v. Eldridge,* supra), at which Mr. Emery testified, that all of Mr. Eastman's saws were taken to the Eldridge home and many of them sold there to Mr. Emery and Mr. Theriault but we must judge the sufficiency of the evidence to support this defendant's conviction from the record of his own trial.

identical stolen objects without the State's recovering the objects from the wrongdoer or without the State's being able to demonstrate positively (as by serial number) which particular one of the stolen objects the defendant had contact with, or without presenting the object as an exhibit. If, for example, six model X saws have been stolen from the victim and the evidence shows that a defendant had illegally received one of them, and the indictment had so charged, it would not be essential that the State should be able to prove which *specific* one of the six he had received.

If the essential elements of the crime are established by testimonial evidence of sufficient force, physical evidence is not a prerequisite for conviction. *Mayes v. State,* Ind.App., 318 N.E.2d 811 (1974).

The entry will be:

Appeal of defendant sustained.

Remanded to Superior Court for new trial.

Appeal of State sustained.